## TAUNTON NATIONAL BANK *vs.* NAHUM STETSON & others.

Plymouth.    Oct. 18. — Nov. 25, 1887.    C. ALLEN & KNOWLTON, JJ., absent.

The Pub. Sts. *c.* 157, § 112, authorize proceedings in insolvency against a debtor whose real estate·has been attached on mesne process in an action of contract for the sum of $100 or upwards, founded on a demand in its nature provable against the estate of an insolvent debtor, if the defendant does not before the return day of the writ dissolve the attachment,·although it appears from the return of the officer that the attachment was a general one, if the defendant then had in fact a record title to real estate in the county in which the attachment was made.

A., the maker of a promissory note indorsed by B., assigned all his property to trustees for the benefit of his creditors, by an indenture, which was also executed by C., the holder of the note, and by other creditors. The indenture provided that a holder of any promissory note to which A. was a party, and upon which any other person was absolutely or contingently liable, did not, by signing the indenture, release or discharge such other person, or in any manner impair his liability thereon; but every such holder fully reserved all rights and remedies thereon, and the same might be as fully enforced as if the indenture had not been executed. *Held,* on a petition by C. against B., under the Pub. Sts. *c.* 157, § 112, to have B. adjudged insolvent, and a warrant issue against his estate, that C. was a creditor of B., within the statute, and that evidence offered by B., that the property received by the trustees of A. was more than enough to pay all A.'s liabilities, was immaterial.

It is not necessary or proper that the judge of insolvency should be made a party to an appeal from his decision dismissing a petition to have a person adjudged insolvent and a warrant issue against his estate.

After a petition to the Court of Insolvency, to have a person adjudged insolvent and a warrant issue against his estate, has been dismissed, it is not necessary that the petitioner should apply to that court for a further hearing before bringing his petition·to this court, under the Pub. Sts. *c.* 157, § 15.

APPEAL from a decision of the Court of Insolvency, dismissing a petition to have the respondent Stetson adjudged insolvent,

and a warrant issue against his estate. Hearing before *C. Allen,* J., who ordered the warrant to issue, and reported the case for the consideration of the full court; such decree to be entered as justice might require. The facts appear in the opinion.

*H. Kingman,* for Stetson.

*H. J. Fuller,* (*J. M. Morton* with him,) for the petitioner.

MORTON, C. J.    Under the Pub. Sts. *c.* 157, § 15, this court has jurisdiction, upon the bill or petition of any party aggrieved, to revise and correct the decisions of a court of insolvency, either in matters of law or of fact, except where special provision is otherwise made. *Lancaster* v. *Choate,* 5 Allen, 530. The question in the case before us is, therefore, whether, upon the facts shown in this court, a warrant should issue against the estate of the respondent Stetson.

The insolvency law provides that, if a person whose goods or estate are attached upon mesne process in a civil action for the sum of one hundred dollars or upwards, founded upon a demand in its nature provable against the estate of an insolvent debtor, has not, before the return day of such process, dissolved the attachment in the manner provided by law, any of his creditors whose claims provable against his estate amount to one hundred dollars, may apply by petition to have his estate seized and distributed under the insolvent law; and, if the facts set forth in the petition appear to be true, a warrant is to issue against the estate of the debtor. Pub. Sts. *c.* 157, §§ 112–114.

In the case before us, it appears from the return of the officer making the attachment, that, on August 16, 1886, a general attachment of all the right, title, and interest which the respondent had in any real estate in the county of Plymouth was made in an action by a creditor upon a debt of more than one hundred dollars, which was in its nature provable against the estate of an insolvent debtor, and that such attachment has never been dissolved. It appears in evidence that, at the time the attachment was made, the respondent had " the record title of certain real estate in said county of Plymouth." It is the settled law of this Commonwealth, that such a general attachment is valid, and is effectual to bind any real estate in the county, of which the record title is in the debtor. *Taylor* v. *Mixter,* 11

Pick. 341. *Pratt* v. *Wheeler*, 6 Gray, 520. *Woodward* v. *Sartwell*, 129 Mass. 210.

The respondent relies upon *Dennis* v. *Sayles*, 11 Met. 233. There are some expressions in the opinion, which, if taken apart from their context, and regarded as intended as statements of general principles, would support the respondent's claim. But in that case the return of the officer was that he had attached the right, title, and interest of the debtor to any real estate in the county, and there was no evidence that the debtor had any real estate which was subject to attachment; and the decision was that such return was not conclusive evidence of an actual attachment.

In the case at bar, as we have seen, the return of the officer was supplemented by proof that the debtor had real estate in the county of Plymouth upon which the attachment operated.

We come next to the question whether the petitioner is a creditor entitled to maintain this petition. It is the holder of three promissory notes, each for the sum of $10,000, and each signed by the Bridgewater Iron Company, payable to the respondent, and by him indorsed to the petitioner. Each of said notes was duly protested at maturity, and due notice given to the respondent. *Prima facie* this was a debt provable against the respondent as an insolvent debtor. But the respondent put in evidence an indenture by which the Bridgewater Iron Company assigned all its property to trustees, for the benefit of its creditors, which indenture was executed by the petitioner and by other creditors. This indenture contains the following provision : " And it is further expressly provided and agreed, that no holder of any promissory note, draft, bill of exchange, check, or other debt to which the said Bridgewater Iron Company is a party, whether as drawer, indorser, guarantor, surety, maker, joint maker, or otherwise, and upon which any other person, firm, or corporation is absolutely or contingently liable, whether as drawer, indorser, guarantor, surety, maker, joint maker, or otherwise, does, by signing or executing these presents, release or discharge such other person, firm, or corporation therefrom, or in any manner impair his or their liability thereon, but, on the contrary, every such holder hereby fully reserves all rights and remedies thereon against any and all such persons, firms, or

corporations, and the same may be as fully enforced as if these presents had not been executed."

We need not consider what would have been the effect of the indenture if it had not contained this provision. By this clause, the petitioner, in the clearest manner, fully reserved all rights and remedies which it had against the respondent as indorser of notes signed by the Bridgewater Iron Company. It would clearly have a right to maintain an action at law on the note against the respondent as indorser, and it is equally clear that it could prove the debt in insolvency proceedings against the respondent. *Tobey* v. *Ellis*, 114 Mass. 120. *Dickinson* v. *Metacomet Bank*, 130 Mass. 132. The assignment to trustees did not pay or extinguish the petitioner's debt against the principal debtor, the maker of the note. To hold thus would nullify the careful provision which we have cited above. It reserved its rights against the indorser, and these rights would continue until the notes are paid, either by the maker, trustees, or indorser. Therefore the evidence offered by the respondent to prove that the property received by the trustees is more than sufficient to pay all the creditors of the Bridgewater Iron Company was properly rejected. If the fact be true, it could not take away the right which the petitioner has to proceed by any appropriate remedy against one who is liable as indorser or otherwise upon the notes of the Bridgewater Iron Company. It follows that the petitioner is a creditor who had the right to apply for a warrant, *in invitum*, against the respondent, under the statute.

The two questions we have considered are the only substantial questions raised by the report. It is not necessary or proper that the judge of insolvency should be made a party to these proceedings. *Winchester* v. *Thayer*, 129 Mass. 129.

The claim of the respondent that the petitioner, after his petition was dismissed by the Court of Insolvency, should have applied to that court for a further hearing before bringing his petition or bill in this court, cannot be sustained. We know of no law which requires such application or further hearing.

It follows, that the order of the judge of insolvency dismissing the petition should be reversed, and an order should be made directing the judge of insolvency to issue a warrant upon the petition.                                    *Decree accordingly.*