# McCaskell v. The State.

## Indictment for Practicing Law without License.

1. *Attorneys at law; constitutionality of requirement of revenue license from.*—There is nothing in the nature of the license obtained by an attorney at law upon admission to the bar, which forbids the imposition, for the purpose of raising revenue, of a license tax for carrying on his profession.

2. *Same.*—Such a tax is not in conflict with that provision of the constitution which requires that taxation upon property shall be in exact proportion to its value.

APPEAL from Circuit Court of Wilcox.

Tried before Hon. JOHN K. HENRY.

The indictment in this case charged that the "defendant, being then and there a lawyer," did engage in or carry on the business or profession of a lawyer, without license, &c. He demurred, on the ground that the law requiring such

license impaired the contract made with him by the State upon his admission to the bar, and violated both section 24, art. 1 of the constitution of Alabama, and section 10, art. 1 of the constitution of the United States; that the license obtained on his admission was a franchise, which could not be taxed except by an *ad valorem* tax; that the obligation to take out and pay for a license was merely an obligation to pay a debt, and to make non-payment of it an offense punishable by imprisonment was a violation of art. 1, sec. 22 of the constitution of the State. The demurrer was overruled, and the defendant pleaded not guilty. He introduced the license to practice law given him in the year 1852, by two judges of the circuit court, and also the license given to him in the year 1857 by this court. The license from this court merely authorized him "to practice as a counsellor and attorney and solicitor in chancery in any of the courts of law and equity in this State." This, together with proof that he practiced law in the county within twelve months before the finding of the indictment, without having taken out any license, was all the evidence.

The court, at the instance of the solicitor, charged the jury if they believed the evidence they must find the defendant guilty. To this charge he excepted. The jury found the defendant guilty, and judgment was rendered against him for the fine assessed.

R. GAILLARD, for appellant.

JOHN W. A. SANFORD, Attorney General, *contra*.

MANNING, J.—A clear distinction exists between the license by which a person is authorized to practice law as an attorney, or medicine as a physician, and the license under a revenue law, by which a person of one of those professions, or engaged in some other employment, is required to contribute a certain sum of money to the public treasury.

In the former case, the license is a certificate, that the person to whom it is given, having been examined in respect to his qualifications, is found fit and worthy, and therefore is thereby authorized to practice in the profession mentioned therein. The facts are pre-supposed and recognized, that peculiar culture, training and skill, and certain intellectual and moral qualities are requisite to enable the licensee to exercise his art or profession, without danger to the persons or interests that may be entrusted to his care; and that against this danger it is the duty of the State as *parens pa-*

*trix*, so far as it can, to protect its people.  This duty it endeavors to perform, by hindering any person from engaging in such employment, except those who, having undergone examination before the authorities designated by the law as competent to make it, shall receive from them the certificates, called licenses, which are the evidence that those to whom they are issued are men of probity, and have the degree of learning and skill, in their respective professions, without which they should not be permitted to exercise them at all.  By such licenses, those who receive them are only put upon the same footing in their chosen occupations, as those are already who engage in a business or pursuit for which the law does not require any previous training, or evidence of fitness.

But a revenue license is only a mode of raising revenue. "There are some kinds of taxes," says Judge Cooley, "that are not usually assessed according to the value of property, and some which could not be so assessed.  And there is probably no State which does not levy taxes other than those which are imposed upon property. . . . .  The license fees, which are sometimes required to be paid by those who follow particular employments, are, when imposed for purposes of revenue, taxes. . . . .  It is evident, therefore, that the constitutional requirements sometimes met with, that taxation upon property shall be according to value, do not include every species of taxation; but all special cases like those we have here referred to, are by implication excepted."  Cooley's Const. Lim. 496–7.

The argument of counsel for appellant, that the right secured to him by the license is a franchise, that a franchise is property, and that the taxation of it as property must be according to the value, which is to be determined by the income derived from it, is more ingenious than sound.  It would be difficult to assess a value upon it as property. And to tax each owner of a franchise which is exactly the same in quality and extent to each, according to the profit they respectively realize therefrom, is to tax, not the so-called property according to its value, but the studious labor, industry, and talent by which one person makes it more productive than another.

It may be very bad as a policy to tax occupations which are in no respect evil in themselves, and the exercise of which can produce no evil in the community, yet we cannot doubt the power of the legislature to do so.  And a practicing lawyer who has a professional license is engaged in an

[McCaskell *v.* The State.]

occupation which is as much subject as any other to taxation by a revenue license.

It has been strenuously contended that, admitting such a tax to be lawful, yet it is a violation of the constitution to punish him who works only in an innocent and useful pursuit, without paying for and taking out a license, with fine and imprisonment; for that the tax when unpaid is merely a debt, and the constitution forbids imprisonment for debt.

Though a tax may, in a general sense, be a debt, it is not so within the meaning of that section of the constitution. It is not created by contract. Set-off cannot be alleged against it. When required by the State to be paid in coin, congress has not the power to make it solvable in "legal tender notes." *County of Lane* v. *Oregon,* 7 Wall. 71. Nor is it subject to the operation of bankruptcy laws enacted by the United States. It operates *in invitum,* and, in the language of a chief justice of another State, "is an impost levied by authority of the government for the support of the State." 26 N. J. Rep. 398.

That the employment is innocent and useful, does not affect the validity of the law concerning the tax. International commerce is in a high degree beneficial. Those who bring into one country commodities from another, in exchange for home products, are engaged equally with the lawyer, the physician, the manufacturer and the shop-keeper, in an occupation that promotes the public welfare. Yet, it is the practice in all nations to pursue and punish with fine and imprisonment the adventurous mariner or merchant, who presumes to introduce foreign merchandise without paying the tax on it exacted by government. In principle, there is no difference between his offense and that of a person of one of the other classes, who engages in a business for which a revenue license is required to be taken out, without paying for it. The difference is one of circumstances only. In either instance, the pith of the matter is the non-payment of the sum exacted for the public treasury. If it is a debt in one case, it is so in the other; but in each there is something more than a mere debt. The tax is a duty to the State, imposed by law, for the maintenance of government, which is necessary for the protection of all against disorder and violence. These considerations, it is, which raise the non-payment of taxes, in certain cases, to be determined by the legislature, into an offense against the commonwealth, for which penalties may be inflicted.

Prosecutions like the present have been so frequent in the history of this State, and the validity of the statutes on

33

[Hickey v. The State.]

which they were founded, so often maintained, that the questions involved in this cause must be regarded as finally settled.

Judgment affirmed.